JESSE SBAIH & ASSOCIATES, LTD.
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel     (702) 896-2529
Fax     (702) 896-0529
jsbaih@sbaihlaw.com
iolevic@sbaihlaw.com

*Attorneys for Plaintiff, individually,*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NAYANANANDA RATNAYAKE, individually, and on behalf others similarly situated,<br><br>              Plaintiff,<br><br>vs.<br><br>FARMERS INSURANCE EXCHANGE d/b/a FARMERS; and DOES I – V and ROES VI – X, inclusive;<br><br>              Defendants. | Case No.:  2:11-cv-01668-APG-CWH<br><br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**(HEARING REQUESTED)** |

Comes now Plaintiff Nayananada Ratnayake ("Mr. Ratnayake" or "Plaintiff"), by and through his counsel of record, Jesse M. Sbaih of Jesse Sbaih & Associates and moves this Honorable Court to certify a class of plaintiffs against Defendant Farmers Insurance Exchange d/b/a Farmers (hereafter "Farmers") for failure to comply with NRS 687B.145.

## I.

## PRELIMINARY STATEMENT

This action provides Farmers with a golden opportunity to remedy the wrongs committed towards its Nevada insureds.  Farmers has a legal and moral obligation to take advantage of this

opportunity by giving back funds it unlawfully, unfairly, and unreasonably collected/retained for many years.

Specifically, the undisputed evidence before this Honorable Court reveals that, for many years, Farmers engaged in a business pattern and practice that deprived Nevada insureds of *any* multi-vehicle discount on UM/UIM premiums in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner.

Moreover, the undisputed evidence before this Honorable Court demonstrates that, for many years, Farmers engaged in a business pattern and practice that deprived Nevada insureds of the *legally required* 28% multi-vehicle discount on UM/UIM premiums in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner.

Finally, sworn evidence provided by Farmers in this litigation reveals that without the l*egally required* 28% multi-vehicle discount on UM/UIM premiums approved by the Nevada Insurance Commissioner specifically to exclude stacking of UM/UIM coverages, Farmers is unable to prevent stacking of UM/UIM coverage. However, as clearly proven by the undisputed documentary evidence produced by Farmers in this litigation, Farmers has failed to provide *any* or the *legally required* 28% UM/UIM multi-car discount to its Nevada insureds. As a result, Farmers has, for many years, engaged in a business pattern and practice of depriving Class I Nevada insureds stackable UM/UIM coverage in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner.

Therefore, Mr. Ratnayake respectfully requests that this Honorable Court certify the following three (3) subclasses:

Subclass A:    All Nevada residents (1) who were, between September 8, 2005 to present, insured by Farmers under multiple personal auto insurance policies; (2) whose Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary policies issued by Farmers due to the presence of an anti-stacking endorsement in the auto policies; and (4) who were not provided with *any* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner (the "**No UM/UIM Multi-Car Discount Subclass**").

Subclass B:    All Nevada residents (1) who were, between September 8, 2005 to present, insured by Farmers under multiple personal auto insurance policies; (2) whose Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary

policies issued by Farmers due to the presence of a anti-stacking endorsement in the auto policies; and (4) who were not provided the *legally required 28%* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner (the "**Below 28% UM/UIM Multi-Car Discount Subclass**").

Subclass C:    All Nevada residents (1) who were, between September 8, 2005 to present, Class I insureds and had more than one vehicle insured with Farmers (2) whose Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary policies issued by Farmers due to the presence of an anti-stacking endorsement in their auto policies; (4) who were not provided *any* or the *legally required 28%* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner; (5) who were injured in a motor vehicle accident; (6) who made a claim for UM/UIM benefits from September 8, 2005 to the present with Farmers; (7) who exhausted the UM/UIM limits available on only one (1) of multiple household vehicles insured by Farmers; and (8) who did not receive stackable UM/UIM benefits available on other household vehicles (the "**UM/UIM Stacking Subclass**").

## II.

## BACKGROUND

*1.    Nevada's Anti-Stacking Law*

Anti-stacking provisions in an insurance policy prevent insureds from combining their coverage limits on separate policies or automobiles.  *See Bove v. Prudential Insurance Co.,* 106 Nev. 682, 684, 799 P.2d 1108, 1109 (1990).  Prior to 1979, all anti-stacking provisions were void under Nevada law.  *Id.* at 685, 799 at 1110.  However, in 1979, the Nevada legislature enacted NRS 687B.145, which authorized anti-stacking provisions if particular requirements are met.  *See* NRS 687B.145(1).

In salient part, NRS 687B.145 states the following:

....Any provision which limits benefits pursuant to this section [Uninsured Motorist, Underinsured Motorist, and Medical Payments Coverage] ***must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.***

NRS 687B.145(1)(emphasis added).

In interpreting NRS 687B.145(1), the Nevada Supreme Court stated the following:

> To be valid under NRS 687B.145(1), ***an anti-stacking clause must meet three principal requirements***: the clause must express the limitation of coverage in clear language (clarity requirement); the clause must be prominently displayed in the policy or amendment (prominence requirement); ***and the insured cannot have paid a full double premium for each of the two or more separate UM coverages (requirement prohibiting double premiums)***.

*Torres v. Farmers Insurance Exchange*, 106 Nev. 340, 344, 793 P.2d 839, 842 (1990)(emphasis added).

Furthermore, in Nevada, an insured has a reasonable expectation that she will receive additional UM/UIM indemnification for each separate UIM premium paid. *Id.* at 346, 793 P.2d at 842-43. Thus, when the insurer attempts to defeat this reasonable expectation, it must prove the validity of its anti-stacking provision in accordance with the requirements of NRS 687B.145(1). *Id.*, 793 P.2d at 843. The ***"burdens of persuasion and production on the issue of the validity of an anti-stacking clause prohibiting stacking of [UIM] coverage limits rest on the insurer*.**" *Id.* (emphasis added).

Placing the burden of proof on the insurer is "especially appropriate" when determining whether the insured purchased separate coverage for the same risk. *See Bove,* 106 Nev. at 687, 799 P.2d at 1111. Since the insurer has ready access to the documents necessary for determining whether double premiums have been paid, and the expertise needed to explain and justify any added premiums, it is reasonable that the insurer bears the duty of presenting such evidence to the court. *Id.,* 799 P.2d at 1111-12.

In *Serrett v. Kimber*, 110 Nev. 486, 874 P.2d 747 (1994), the Nevada Supreme Court was called upon to decide, among other things, whether a Liberty Mutual insured purchased separate coverage for the same UM risk and paid a premium calculated for full reimbursement under that coverage. *Id.* at 491, 874 P.2d at 751. In doing so, the Nevada Supreme Court repeated that "the ***burden of proving*** that Liberty did not violate the third prong of the test for avoiding the imposition of stacking ***rests with Liberty*.**" *Id.* (citation omitted) (emphasis added).

Despite the fact that the insured's declaration page indicated that he may have been charged separate premiums for UM/UIM coverage on each insured vehicle, Liberty Mutual, in support of its contention that its insured was not charged a full premium, offered the affidavit of one of its

employees.  *Id.* at 492, 874 P.2d at 751.  In the affidavit, Liberty Mutual's employee stated that Liberty Mutual did not sell its insured two (2) separate UM/UIM coverages and that Liberty Mutual complied with NRS 687B.145 by charging the insured a "flat rate" for UM/UIM coverage.  *Id.*

In reversing the order granting summary judgment in favor of Liberty Mutual, the Nevada Supreme Court held the following:

> Although Liberty attempted to explain the actuarial basis for its premiums during oral argument, ***it relied upon the above affidavit as its sole evidence that Serrett did not purchase separate coverage for the same risk for which he paid a premium calculated to provide full reimbursement under that coverage***. Given the rather arcane or cryptic justification for Liberty's billing, as presented to the district court and on appeal, we are compelled to conclude that summary judgment was improper. ***Our decision in Bove contemplates the introduction of actual evidence that is possessed by the insurer***. Thus, ***something more than an unsupported affidavit from a Liberty employee is required to meet the third requirement of NRS 687B.145(1)***. *See also Clauson v. Lloyd,* 103 Nev. 432, 743 P.2d 631 (1987) (holding that a self-serving affidavit will not support summary judgment); *Catrone v. 105 Casino Corp.,* 82 Nev. 166, 171, 414 P.2d 106, 109 (1966) (affidavits are ineffective when they state "conclusion[s] without factual support in the record").

*Id.* at 492, 874 P.2d at 751 (emphasis added).

Similarly, in *Nationwide Mut. Ins. Co. v. Coatney*, 118 Nev. 180, 42 P.3d 265 (2002), the Nevada Supreme Court noted that the insurer in that case presented sufficient evidence to obtain summary judgment in its favor by (1) offering the testimony of its actuary concerning the method of calculating UM premiums in Nevada, and (2) "***actuarial tables and a summary of the model it used for UM premium pricing***." *Id.* at 182, 42 P.3d at 266.

Most recently, the Honorable Judge Larry Hicks tackled an issue similar to the one before this Honorable Court.  Specifically, in *Jackoby v. GEICO General Ins. Co.*, 2012 WL 3598817 (D.Nev. August 20, 2012), GEICO argued that its insured is not entitled to stack UM coverage available on his two (2) other vehicles because he paid a reduced UM premium on his two (2) other vehicles.  *Id.* at *3. In finding in favor of GEICO, the Court noted that the following:

> Here, it is undisputed that Jackoby w***as charged reduced values for each successive auto policy with GEICO***. The evidence establishes that he was ***charged $94.80 for the first vehicle and a reduced rate of $75.90 for the second and third insured vehicles***.

*Id.* (emphasis added).  Stated differently, an insurer fails to meet its burden that an anti-stacking discount was given and *stacking of UM/UIM coverage must be allowed* if each secondary policy does not have the legally required UM/UIM premium discount.

**2.      *Farmers' Purported Effort to Comply with Nevada's Anti-Stacking Law in the Early 1990s***

      **a.      *The Nevada Supreme Court Decides Torres and Bove in 1990***

On May 30, 1990, the Nevada Supreme Court decided *Torres*, 106 Nev. at 340, 793 P.2d 839 at 842, a case that involved Farmers, the Defendant in this action.  In *Torres*, the Nevada Supreme Court reiterated the three (3) NRS687B.145(1) requirements (clarity, prominence, and premium prohibition) for enforcing an anti-stacking provision.  *Id.* at 344, 793 P.2d at 842.

On October 25, 1990, the Nevada Supreme Court decided *Bove,* 106 Nev. at 684, 799 P.2d at 1109.  In *Bove,* the Nevada Supreme Court also reiterated that an anti-stacking clause is only valid when "the insured must not have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage."  *Id.* at 685, 799 P.2d at 1110.

      **b.      *Farmers Becomes Concerned after Torres and Bove are Decided and Seeks Changes to Increase its UM/UIM Multi-Car Discount from 10% to 28% in Lieu of Stacking***

On July 16, 1992, Farmers (concerned with its UM/UIM premium structure in light of the holdings in *Torres* and *Bove*), filed a Private Passenger Auto Rate and Rule Revision with the Nevada Department of Insurance ("Farmers' 1992 Rate Revision Filing").  A true and accurate copy of Farmers' 1992 Rate Revision Filing (which was recently produced by Farmers in this action) is attached hereto as *Exhibit 1*.  In Farmers' 1992 Rate Revision Filing, Farmers stated the following:

> We respectfully submit for filing revisions in our Private Passenger Automobile Rate and Rules.  Our Proposed change is to ***increase our Uninsured Motorist Multi-Car Discount from 10% to 28%***.

> The purpose of this change is to comply with one of the three requirements of §687B.145, which states that any provision preventing the stacking of multiple policies ***is void*** if the named insured has paid a premium calculated for full reimbursement….

*Exhibit 1*, FIE12492 (emphasis added).

///

///

### c.    December 1, 1992 Public Hearing on Farmers' Request to Increase its UM/UIM Multi-Car Discount from 10% to 28% in Lieu of Stacking UM/UIM Coverage

On December 1, 1992, the Nevada Department of Insurance conducted a public hearing regarding Farmers' proposed increase of underinsured motorist multi-car discount from 10% to 28% sought in Farmers' 1992 Rate Revision Filing in lieu of stacking of UM/UIM coverage.  *See* a true and accurate copy of the December 1, 1992 hearing transcript, which was recently produced by Farmers in this action ("December 1, 1992 Hearing Transcript") attached hereto as *Exhibit 2*.

During the December 1, 1992 hearing, Patricia Walker, the personal line Actuary for the Western Zone for Farmers Insurance Group and the person responsible for directing personal lines pricing in the thirteen (13) western states, testified on behalf of Farmers in support of increasing underinsured motorist multi-car discount from 10% to 28%.  In so doing, Ms. Walker, in salient part, provided the following testimony:

> The purpose of this change **is to comply with one of the three requirements of the Nevada Insurance Code Section 686B.445** which states that **any provisions preventing the stacking of the limits of multiple policies is void** if the named insured has paid a premium calculated for full reimbursement.
>
> **In order to comply with the aforementioned provision relating to premium calculation**, we estimated with our UIM rate calculation with the stacking of UM did not exist in Nevada.  Recognizing that adopting a nonstacking provision should not effect single car policyholders **but the multiple car households would pose a lower exposure under a stacking environment, we are filing for an increase in our UM multi-car discount**.
>
> We are proposing increasing the multi-car discounts from **ten percent to 28 percent in Farmers** and five percent to 28 percent in Mid-Century [Insurance].
>
> We did a study to determine the indicated UM multi-car discounts for **nonstacking states surrounding Nevada.**  The states we looked at were Arizona, Oregon, Idaho and Utah.  **The indicated discount which resulted from this study was 28.4 percent, so we elected to propose 28 percent in these filings**.

*See Exhibit 2*, FIE012473, lines 12-17; FIE012476, lines 2-9; FIE012478, lines 1-3; and  FIE012478, lines 6-11 (emphasis added).

***d.    The Nevada Insurance Commissioner Approves Farmers' Request to Increase its UM/UIM Multi-Car Discount from 10% to 28% in Lieu of Stacking***

On July 19, 1993, Teresa P. Froncek Rankin, J.D. (Nevada's Insurance Commissioner at the time) issued an order regarding Farmers' proposed increase of underinsured motorist multi-car discount from 10% to 28% sought in Farmers' 1992 Rate Revision Filing ("Insurance Commissioner's July 19, 1993 Order"). A true and accurate copy of the Insurance Commissioner's July 19, 1993 Order (which was recently produced by Farmers in this action) is attached hereto as *Exhibit 3*.

In the Insurance Commissioner's July 19, 1993 Order, the Nevada Insurance Commissioner, in approving Farmers' request to increase its multi-car discount from 10% to 28% in lieu of stacking, made the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.     Respondents sought a rate reduction based upon a rate design ***that excludes stacking for uninsured motorist coverage (UM)***. See NRS 690B.020.

2.     NRS 687B.145 (2) requires both UM and underinsured motorist coverage (UIM) to comply with NRS 690B.020. Department Reference Nos. 171 and 173 are the relevant filings.

3.     Respondents sought the rate changes based upon the holdings of two Nevada Supreme Court opinions, Torres v. Farmers Insurance Exchange, 106 Nev. 340, 793 P. 839 (1990), and Bove v. Prudential Property and Liability Insurance Company, et al., 106 Nev. 682, 799 P.2d 1104 (1990). These opinions held that the insured could stack, based upon policy language that failed to satisfy statutory clarity requirements, and that the insurer has the burden of proof that its rates are designed for the risk assumed by the insurer.

4.     The issue here is only the relative risk of non-stacking and ***stacking as measured by rates***.

5.     ***Respondents contend that without a rate that specifically excludes stacking of coverages, they are unable to prevent stacking of coverage***.

6.     Respondents provided the testimony of Patricia Walker, ACAS. Respondents have not provided company specific statistical support for this position. Respondents did provide 1989 data from the Automobile Insurance Research Advisory Council, as industry statistics. ***The statistics indicated that UM-UIM payments are about 28 percent greater in stacking states than in non-stacking states. Respondents do not maintain statistics on stacked claims***.

7.      Farmers rate request seeks an average reductions of 14.1 percent for UM coverage and 1.7 percent overall. The filing seeks for Mid-Century an average UM-UIM reduction of 7.9 percent, and 6 percent overall.

8.      The Farmers average reduction of 14.1 percent *is to be achieved by increasing the UM-UIM multi-car discount to 28 percent from 10 percent*, with single car UM-UIM rates remaining unchanged....

12.      The Department's property/casualty actuary introduced State Farm Automobile Insurance Company data as evidence of his further research. *It is here noted that the 28 percent multi-car rate discounts are thus further justified*.

### CONCLUSIONS OF LAW

1.      Nevada law imposes upon insurers the obligation to define whether UM-UIM may be stacked, and under what circumstances the coverages may not be stacked. *NRS 687B.145(2) requires both UM and UIM coverage to comply with NRS 690B.020*. Insureds may purchase UM-UIM motorist coverage equal to the limits of coverage for bodily injury coverage. The issue of stacking has occupied the courts and the Nevada Legislature for several years. *This order is intended to clarify the issue of stacking of policy limits of UM-UIM coverages by establishing actuarially acceptable multi-car discounts for Respondents*.

2.      The Department's property/casualty actuary recommended that rates approved by the commissioner which are specifically presented as *non-stacking*, as these are by Respondents, would probably be accepted under the rational of <u>Bove</u>, Supra, 106 Nev. 682.

### ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, the testimony of the witness Patricia Walker, and the statistical support, *the 28 percent multi-car discounts as defined in Department Reference Nos. 171 and 173, are approved*. The policy language was approved by the Department in September 1992.

*Exhibit 3*, FIE012463-FIE012466 (emphasis added).

     e.      ***Patricia Walker's Affidavit Confirms that Farmers Fully Understood that it Must Increase its Multi-Car Discount from 10% to 28% in Order for Farmers' Anti-Stacking Endorsement to be Valid***

On April 14, 1995, Patricia Walker, the same person who testified on behalf of Farmers at the December 1, 1992 public hearing, provided an affidavit relating to Farmers' 1992 Rate Revision Filing

("Ms. Walker's Affidavit").[1]  A true and accurate copy of Ms. Walker's Affidavit (which was recently produced by Farmers in this action) is attached hereto as *Exhibit 4.*

In Ms. Walker's Affidavit, in salient part, Ms. Walker made the following *sworn* representations regarding the 28% multi-car discount implemented in compliance with NRS 687B.145(1) and the Nevada Supreme Court holdings in *Torres* and *Bove*, *supra*:

> 7.  That the rate Filing proposed an increase in Farmers Insurance Exchange's uninsured motorist ***multi-care discount from 10% to 28%.***

> 8.  That ***the proposed policy change to eliminate stacking*** reduced Farmer Insurance Exchange's uninsured motorist rate need from 53.5% to 19.5% based upon a study of automobile claims in the United States by the All-Industry Research Advisory Council (AIRAC), which indicated an approximately ***28% difference in underinsured payments between stacking states and non-stacking states***.

> 10.  That the purpose of the proposed increase in Farmers Insurance Exchange's ***uninsured motorist multi-car discoun***t was ***to comply with the "premium requirement" of NRS § 687B.145(1)***, which states that "[a]ny limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage."

> 11.  That the purpose of the proposed increase in Farmers Insurance Exchange's ***uninsured motorist multi-car discount was also to comply with the holdings of two Nevada Supreme Court decisions***, <u>Torres v. Farmers Ins. Exch.</u>, 106 Nev. 340, 793 P.2d 839 (1990), and <u>Bove v. Prudential Ins. Co.</u>, 106 Nev. 632, 799 P.2d 1104 (1990).

> 13.  That the methodology used in determining the proposed ***28% discount was consistent with actuarial guidelines*** regarding property and casualty insurance rate....

> 14.  That the methodology used in determining the ***proposed 28% discount was consistent with the requirements of Nevada Insurance Code §§ 686B.050 and 686B.060***.

> 15.  That the methodology used in determining ***the proposed 28% discount was actuarially sound and reasonable***.

---

[1] Farmers produced Ms. Walker's affidavit in this action without providing any context for which the affidavit was prepared.  Nonetheless, Ms. Walker's sworn testimony in the subject affidavit is profoundly important in this case to illustrate, among other things, that Farmers understood its obligations under Nevada statutory and case law and the Insurance Commissioner's July 19, 1993 Order.

19. That the **28% multi-car discount complies with the "premium discount" requirement of NRS 687B.145(1)** and the holdings of <u>Torres</u> and <u>Bove</u>, <u>supra</u>.

*See Exhibit 4*, FIE012492 (emphasis added).

**3.    *Farmers' Rampant and Blatant Violation of NRS 687B.145(1) and Utter Disregard for the Insurance Commissioner's July 19, 1993 Order***

In this action, Farmers has produced several spreadsheets as a small sampling of its UM/UIM premium charges during the years 2006-2009.  Indeed, the subject documents reveal that Farmers willfully violated NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order by refusing to provide Nevada insureds *any* or the *legally required* 28% multi-car discount on secondary policies.

**a.    *Farmers' 2006 UM/UIM Premium Charges Failed to Comply with Nevada's Anti-Stacking Law***

On October 14, 2011, Farmers attached to its Notice of Removal (Dkt. 1) only eleven (11) out of *3134* pages containing UM/UIM premium charges data for its Nevada insureds for the year 2006 ("Farmers' 2006 UM/UIM Premium Sampling").  A copy of Farmers' 2006 UM/UIM Premium Sampling (with notes/calculations on the side of the page added by Plaintiff's counsel for clarification purposes) is attached hereto as *Exhibit 5.*

In the small sampling produced by Farmers in this action for the year 2006, a total of 458 policies were listed of which *167* policies were initial policies (the first policy issued by Farmers for a household) and *264* were secondary policies (policies issued by Farmers for a household's second, third, etc. covered vehicle).  *See* a Summary of UM/UIM Premium Charges Based on Farmers' 2006 Sampling (prepared by Plaintiff's counsel for this Honorable Court's convenience) attached hereto as *Exhibit 6.*  From the 2006 sampling provided, the following staggering numbers were deduced:

| | |
|---|---|
| *Number of Total Policies* | **458** |
| *Number of Initial Policies* | **167** |
| *Number of Secondary Policies* | **264** |
| *Number of Initial Policies not Followed by a Secondary Policy* | **27** |
| *Number of Secondary Policies where no discount from the Initial Policy UM/UIM Premium was given* | **131** |
| *Percentage of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given (131/264)* | **49.62%** |

| | |
|---|---|
| *Number of Secondary Policies where discount from the Initial Policy UM/UIM Premium is less than 28%* | **114** |
| *Percentage of Secondary Policies where discount from the Initial Policy UM/UIM Premium is less than 28% (114/264)* | **43.18%** |
| *Number of Secondary Policies where discount of 28% or more from the Initial Policy UM/UIM Premium was given* | **19** |
| *Percentage of Secondary Policies where discount of 28% or more from the Initial Policy UM/UIM Premium was given (19/264)* | **7.20%** |
| *Total Number of Secondary Policies Noncompliant with Nevada Anti-Stacking Law* | **245** |
| *Percentage of Secondary Policies Noncompliant with Nevada Anti-Stacking Law (245/264)* | **92.80%** |

Therefore, based on the very small sampling data (only 11 out of 3134 pages) provided by Farmers for 2006, a staggering 92.80% (245/264) of secondary policies did not receive *any* or the *legally required* 28% UM/UIM multi-car discount in violation of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.  In addition, based on the sampling, at least 92.80% of Farmers' secondary policyholders were entitled to stack UM/UIM coverage in 2006 due to Farmers' willful violation of Nevada's anti-stacking laws.

      **b.**      ***Farmers' 2007 UM/UIM Premium Charges Failed to Comply with Nevada's Anti-Stacking Law***

On October 14, 2011, Farmers attached to its Notice of Removal (Dkt. 1) only eleven (11) out of *2921* pages containing UM/UIM premium charges data for its Nevada insureds for the year 2007 ("Farmers' 2007 UM/UIM Premium Sampling").  A copy of Farmers' 2007 UM/UIM Premium Sampling (with notes/calculations on the side of the page added by Plaintiff's counsel for clarification purposes) is attached hereto as *Exhibit 7*.

In the small sampling produced by Farmers in this action for the year 2007, a total of 490 policies were listed of which *181* policies were initial policies (the first policy issued by Farmers for a household) and *276* were secondary policies (policies issued by Farmers for a household's second, third, etc. covered vehicle).  *See* a Summary of UM/UIM Premium Charges Based on Farmers' 2007 Sampling (prepared by Plaintiff's counsel for this Honorable Court's convenience) attached hereto as *Exhibit 8*.  From the 2007 sampling provided, the following staggering numbers were deduced:

| | |
|---|---|
| *Number of Total Policies* | **490** |

| | |
|---|---|
| *Number of Initial Policies* | **181** |
| *Number of Secondary Policies* | **276** |
| *Number of Initial Policies not Followed by a Secondary Policy* | **33** |
| *Number of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given* | **126** |
| *Percentage of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given (126/276)* | **45.65%** |
| *Number of Secondary Policies where discount from Initial Policy UM/UIM Premium is less than 28%* | **126** |
| *Percentage of Secondary Policies where discount from Initial Policy UM/UIM Premium is less than 28% (126/276)* | **45.65%** |
| *Number of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given* | **24** |
| *Percentage of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given (24/276)* | **8.70%** |
| *Total Number of Secondary Policies Noncompliant with Nevada Anti-Stacking Law* | **252** |
| *Percentage of Secondary Policies Noncompliant with Nevada Anti-Stacking Law (252/276)* | **91.30%** |

Therefore, based on the very small sampling data (only 11 out of 2921 pages) provided by Farmers for 2007, a staggering 91.30% (252/276) of secondary policies did not receive *any* or the *legally required* 28% UM/UIM multi-car discount in violation of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.  In addition, based on the sampling, at least 91.30% of Farmers' secondary policyholders were entitled to stack UM/UIM coverage in 2007 due to Farmers' willful violation of Nevada's anti-stacking laws.

       **c.**       ***Farmers' 2008 UM/UIM Premium Charges Failed to Comply with Nevada's Anti-Stacking Law***

On October 14, 2011, Farmers attached to its Notice of Removal (Dkt. 1) only eleven (11) out of *2175* pages containing UM/UIM premium charges data for its Nevada insureds for the year 2008 ("Farmers' 2008 UM/UIM Premium Sampling").  A copy of Farmers' 2008 UM/UIM Premium Sampling (with notes/calculations on the side of the page added by Plaintiff's counsel for clarification purposes) is attached hereto as *Exhibit 9.*

In the small sampling produced by Farmers in this action for the year 2008, a total of 470 policies were listed of which *173* policies were initial policies (the first policy issued by Farmers for a household) and *261* were secondary policies (policies issued by Farmers for a household's second,

third, etc. covered vehicle).  *See* a Summary of UM/UIM Premium Charges Based on Farmers' 2008 Sampling (prepared by Plaintiff's counsel for this Honorable Court's convenience) attached hereto as *Exhibit 10*.  From the 2008 sampling provided, the following staggering numbers were deduced:

| | |
|---|---|
| *Number of Total Policies* | **470** |
| *Number of Initial Policies* | **173** |
| *Number of Secondary Policies* | **261** |
| *Number of Initial Policies not Followed by a Secondary Policy* | **36** |
| *Number of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given* | **156** |
| *Percentage of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given (156/261)* | **59.77%** |
| *Number of Secondary Policies where discount from Initial Policy UM/UIM Premium is less than 28%* | **83** |
| *Percentage of Secondary Policies where discount from Initial Policy UM/UIM Premium is less than 28% (83/261)* | **31.80%** |
| *Number of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given* | **22** |
| *Percentage of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given (22/261)* | **8.43%** |
| *Total Number of Secondary Policies Noncompliant with Nevada Anti-Stacking Law* | **239** |
| *Percentage of Secondary Policies Noncompliant with Nevada Anti-Stacking Law (239/261)* | **91.57%** |

Therefore, based on the very small sampling data (only 11 out of 2715 pages) provided by Farmers for 2008, a staggering 91.57% (239/261) of secondary policies did not receive *any* or the *legally required* 28% UM/UIM multi-car discount in violation of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.  In addition, based on the sampling, at least 91.57% of Farmers' secondary policyholders were entitled to stack UM/UIM coverage in 2008 due to Farmers' willful violation of Nevada's anti-stacking laws.

> **d.    Farmers' 2009 UM/UIM Premium Charges Failed to Comply with Nevada's Anti-Stacking Law**

On October 14, 2011, Farmers attached to its Notice of Removal (Dkt. 1) only eleven (11) out of *2484* pages containing UM/UIM premium charges data for its Nevada insureds for the year 2009 ("Farmers' 2009 UM/UIM Premium Sampling").  A copy of Farmers' 2009 UM/UIM Premium

Sampling (with notes/calculations on the side of the page added by Plaintiff's counsel for clarification purposes) is attached hereto as *Exhibit 11*.

In the small sampling produced by Farmers in this action for the year 2009, a total of 484 policies were listed of which *182* policies were initial policies (the first policy issued by Farmers for a household) and *276* were secondary policies (policies issued by Farmers for a household's second, third, etc. covered vehicle).  *See* a Summary of UM/UIM Premium Charges Based on Farmers' 2009 Sampling (prepared by Plaintiff's counsel for this Honorable Court's convenience) attached hereto as *Exhibit 12*.  From the 2009 sampling provided, the following staggering numbers were deduced:

| | |
|---|---|
| *Number of Total Policies* | **484** |
| *Number of Initial Policies* | **182** |
| *Number of Secondary Policies* | **276** |
| *Number of Initial Policies not Followed by a Secondary Policy* | **26** |
| *Number of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given* | **159** |
| *Percentage of Secondary Policies where no discount from Initial Policy UM/UIM Premium was given (159/276)* | **57.61%** |
| *Number of Secondary Policies where discount from Initial Policy is less than 28%* | **88** |
| *Percentage of Secondary Policies where discount from Initial Policy UM/UIM Premium is less than 28%  (88/276)* | **31.88%** |
| *Number of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given* | **29** |
| *Percentage of Secondary Policies where discount of 28% or more from Initial Policy UM/UIM Premium was given (29/276)* | **10.51%** |
| *Total Number of Secondary Policies Noncompliant with Nevada Anti-Stacking Law* | **247** |
| *Percentage of Secondary Policies Noncompliant with Nevada Anti-Stacking Law (247/276)* | **89.49%** |

Therefore, based on very small sampling data (only 11 out of 2484 pages) provided by Farmers for 2009, a staggering 89.49% (247/276) of secondary policies did not receive *any* or the *legally required* 28% UM/UIM multi-car discount in violation of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.  In addition, based on the sampling, at least 89.49% of Farmers' secondary policy holders were entitled to stack UM/UIM coverage in 2009 due to Farmers' willful violation of Nevada's anti-stacking laws.

In sum, based on the small sampling from 2006-2009, 91.29% (983) of secondary policyholders insured with Farmers were not provided with *any* or received less than the *legally required* 28% UM/UIM multi-car discount in violation of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.

Consequently, there is no question that Farmers had a business pattern and practice (with a disturbing 91.29% accuracy and proficiency) of depriving its secondary policyholders in Nevada of multi-car UM/UIM discount in violation of Nevada's anti-stacking laws.

### 4.      Farmers Failed to Stack UM/UIM Coverage in Violation of Nevada's Anti-Stacking Laws

In Farmers' 1992 Rate Revision Filing, Farmers sought to increase its UM/UIM multi-car discount from 10% to 28% in order to comply with the "premium requirement" of Nevada's anti-stacking laws. *See Exhibit 1*. In the same filing, Farmers indicated/admitted that its anti-stacking provision would be "void" under Nevada law if the 28% discount is not approved. *Id.* During the December 1, 1992 public hearing, Farmers, in attempting to convince the Nevada Insurance Commissioner to approve the increase of its UM/UIM multi-car discount from 10% to 28%, also represented that said increase is necessary to comply with Nevada's anti-stacking laws. *See Exhibit 2*.

In the Insurance Commissioner's July 19, 1993 Order, in approving Farmers' request to increase the UM/UIM multi-car discount from 10% to 28%, the Nevada Insurance Commissioner stated that Farmers sought such specific rate in order to comply with Nevada's anti-stacking laws and that "***Respondents*** [Farmers] ***contend that without a rate*** [the 28% UM/UIM multi-car discount] ***that specifically excludes stacking of coverages, they are unable to prevent stacking of coverage***." *See Exhibit 3* (emphasis added).

On April 14,1995, nearly two (2) years after the issuance of Insurance Commissioner's July 19, 1993 Order, Patricia Walker, the same person who testified on behalf of Farmers at the December 1, 1992 public hearing, provided sworn testimony that "the purpose of the proposed increase in Farmers Insurance Exchange's ***uninsured motorist multi-car discoun***t [from 10% to 28%] ***was  to comply with the "premium requirement" of NRS § 687B.145(1)***" and "***to comply with the holdings of two Nevada Supreme Court decisions***, Torres v. Farmers Ins. Exch., 106 Nev. 340, 793 P.2d 839 (1990), and Bove v. Prudential Ins. Co., 106 Nev. 632, 799 P.2d 1104 (1990)." *See Exhibit 4*, ¶ 10-11

(emphasis added).  Ms. Walker added that "the **28% multi-car discount complies with the "premium discount" requirement of NRS 687B.145(1)** and the holdings of <u>Torres</u> and <u>Bove</u>, <u>supra</u>."  *See Id.*, ¶ 14 (emphasis added).

As fully discussed above, despite being fully aware of its obligations under Nevada's anti-stacking laws, the evidence provided by Farmers in this litigation reveals that Farmers has a business pattern and practice of not providing its insureds with a UM/UIM multi-car discount as required by Nevada's anti-stacking laws.  Such blatant and willful violation of the law renders Farmers' anti-stacking endorsement/provisions in its insurance policies "***void***" (a term specifically used by Farmers in its 1992 Rate Revision Filing with the Nevada Insurance Commissioner) and allows Class I insureds (named insureds in the Farmers policy or family members) to stack UM/UIM coverage available on other household vehicles insured by Farmers.

In its Notice of Removal (Dkt. 1), which was filed with the Court on October 14, 2011, Farmers made the following representations/observations:

> In the years 2006-2009, there were **at least 1,323 claims** submitted by Farmers Insurance Exchange customers that insured more than one household vehicle for **UM/UIM coverage**.
>
> **Of those 1,323 claims, approximately 439 had a total claim amount paid out that was equal to the highest UM/UM limits of a single vehicle in the household.**
>
> Because the amount paid on those claims equaled the policy limits, it is likely that the policy limits were exhausted for those claims.  Therefore, **those insureds are likely included in the Claims Sub-Classes defined by Plaintiff, as they allegedly should have been allowed to seek additional UM/UIM benefits on other household vehicles**.

*See* Dkt. 1 at 9 (emphasis added).

In support of its assertion that 439 Nevada insureds had "a total claim amount paid out that was equal to the highest UM/UIM limits of a single vehicle in the household" between 2006 through 2009, Farmers provided the affidavit of Janette L. Ferguson, Esq. (one of Farmers' attorneys in this action) who reviewed the UM/UIM claims summaries for those years and highlighted the claims that would be eligible for stacking in the event Farmers failed to follow Nevada's anti-stacking laws.  A true and

accurate copy of Ms. Ferguson's affidavit and the highlighted 2006 through 2009 UM/UIM claims summaries are collectively attached hereto as *Exhibit 13*.

The 2006-2009 UM/UIM claims summaries reviewed and highlighted by Ms. Ferguson are organized differently from the 2006-2009 UM/UIM claims summaries attached to the same Notice of Removal (Dkt. 1) as part of the affidavit of Inder Sohi (a program manager for Management Information Systems with Farmers). A true and accurate copy of Ms. Sohi's Affidavit and the 2006-2009 UM/UIM claims summaries are collectively attached hereto as *Exhibit 14*.

In order to ensure the accuracy of the number of potential Farmers' insureds who should have been allowed to stack UM/UIM benefits on other household vehicles between 2006 through 2009, Plaintiff's counsel carefully reviewed, highlighted, and summarized the UM/UIM claims summaries attached to Ms. Sohi's affidavit. The results are as follows:

**-2006 UM/UIM Claims (Document 1-11, which contains 8 pages)**

> -2006 (page 1 of 8): 23 claims settled for UM/UIM policy limits.
> -2006 (page 2 of 8): 18 claims settled for UM/UIM policy limits.
> -2006 (page 3 of 8): 18 claims settled for UM/UIM policy limits.
> -2006 (page 4 of 8): 17 claims settled for UM/UIM policy limits.
> -2006 (page 5 of 8): 22 claims settled for UM/UIM policy limits.
> -2006 (page 6 of 8): 14 claims settled for UM/UIM policy limits.
> -2006 (page 7 of 8): 9 claims settled for UM/UIM policy limits.
> -2006 (page 8 of 8): 18 claims settled for UM/UIM policy limits.

> **Total 2006**: *139* claims settled for UM/UIM policy limits *where stacking of UM/UIM coverage should have been allowed on other household vehicles.*

A true and accurate copy of Farmers' 2006 UM/UIM Claims Summary (highlighted by Plaintiff's counsel to identify relevant claims) is attached hereto as *Exhibit 15.*

**-2007 UM/UIM Claims (Document 1-11, which contains 7 pages)**

> -2007 (page 1 of 7): 20 claims settled for UM/UIM policy limits.
> -2007 (page 2 of 7): 23 claims settled for UM/UIM policy limits.
> -2007 (page 3 of 7): 21 claims settled for UM/UIM policy limits.
> -2007 (page 4 of 7): 12 claims settled for UM/UIM policy limits.
> -2007 (page 5 of 7): 17 claims settled for UM/UIM policy limits.
> -2007 (page 6 of 7): 15 claims settled for UM/UIM policy limits.
> -2007 (page 7 of 7): 15 claims settled for UM/UIM policy limits.

> **Total 2007**: *123* claims settled for UM/UIM policy limits *where stacking of UM/UIM coverage should have been allowed on other household vehicles.*

A true and accurate copy of Farmers' 2007 UM/UIM Claims Summary (highlighted by Plaintiff's counsel to identify relevant claims) is attached hereto as *Exhibit 16*.

**-2008 UM/UIM Claims (Document 1-11, which contains 6 pages)**

-2008 (page 1 of 6): 26 claims settled for UM/UIM policy limits.
-2008 (page 2 of 6): 21 claims settled for UM/UIM policy limits.
-2008 (page 3 of 6): 13 claims settled for UM/UIM policy limits.
-2008 (page 4 of 6): 21 claims settled for UM/UIM policy limits.
-2008 (page 5 of 6): 17 claims settled for UM/UIM policy limits.
-2008 (page 6 of 6): 10 claims settled for UM/UIM policy limits.

**Total 2008**: *108* claims settled for UM/UIM policy limits *where stacking of UM/UIM coverage should have been allowed on other household vehicles*.

A true and accurate copy of Farmers' 2008 UM/UIM Claims Summary (highlighted by Plaintiff's counsel to identify relevant claims) is attached hereto as *Exhibit 17*.

**-2009 UM/UIM Claims (Document 1-11, which contains 5 pages)**

-2009 (page 1 of 5): 30 claims settled for UM/UIM policy limits.
-2009 (page 2 of 5): 24 claims settled for UM/UIM policy limits.
-2009 (page 3 of 5): 24 claims settled for UM/UIM policy limits.
-2009 (page 4 of 5): 21 claims settled for UM/UIM policy limits.
-2009 (page 5 of 5): 0 claims settled for UM/UIM policy limits.

**Total 2009**: *99* claims settled for UM/UIM policy limits *where stacking of UM/UIM coverage should have been allowed on other household vehicles*.

A true and accurate copy of Farmers' 2009 UM/UIM Claims Summary (highlighted by Plaintiff's counsel to identify relevant claims) is attached hereto as *Exhibit 18*.

Therefore, based on the data provided by Farmers in this action for the shortened time period of 2006 through 2009, there were at least *469* claims settled for UM/UIM policy limits where stacking of UM/UIM coverage available on other household vehicles should have been allowed by Farmers.

**5.    *Farmers Ostensibly Stacked UM/UIM Coverage on Prior Occasions upon a Likely Challenge by its Insureds to its Unlawful Anti-Stacking Practices***

Strangely, although Farmers has been adamant during this litigation that it does not stack UM/UIM coverage, Farmers' own records reveal otherwise.

Specifically, in 2006, Farmers paid ***$740,000.00 on three (3) policies with 250/500 UM/UIM limits***.    *See* page 2 of 8 of Farmers' 2006 Claims Summary (highlighted by Plaintiff's counsel to identify the subject claim) attached separately hereto as *Exhibit 19*. Thus, Farmers ostensibly agreed to

stack UM/UIM coverage for that insured by stacking UM/UIM coverage on all three (3) household vehicles.

Moreover, in 2007, Farmers had at least four (4) instances where it ostensibly stacked UM/UIM coverage for its insureds.  For example, Farmers paid *$100,000.00 on five (5) policies with 50/100 UM/UIM limits*.  *See* page 1 of 7 of Farmers' 2007 Claims Summary (highlighted by Plaintiff's counsel to identify the subject claim) attached separately hereto as *Exhibit 20*.  Thus, Farmers ostensibly agreed to stack UM/UIM coverage for that insured by stacking UM/UIM coverage on two (2) of the five (5) household vehicles.

In another claim in 2007, Farmers paid *$475,000.00 on three (3) policies with 250/500 UM/UIM limits*.  *See* page 2 of 7 of Farmers' 2007 Claims Summary (highlighted by Plaintiff's counsel to identify the subject claim) attached separately hereto as *Exhibit 21*.  Thus, Farmers ostensibly agreed to stack UM/UIM coverage for that insured by stacking UM/UIM coverage on two (2) of the three (3) household vehicles.

In yet another claim in 2007, Farmers paid *$50,000.00 on two (2) policies with 30/60 UM/UIM limits* and a third vehicle with 25/50.  *See* page 4 of 7 of Farmers' 2007 Claims Summary (highlighted by Plaintiff's counsel to identify the subject claim) attached separately hereto as *Exhibit 22*.  Thus, Farmers ostensibly agreed to stack UM/UIM coverage for that insured by stacking UM/UIM coverage on two (2) of the three (3) household vehicles.

Finally, Farmers paid *$125,000.00 on two (2) policies with 100/300 UM/UIM limits*.  *See* page 5 of 7 of Farmers' 2007 Claims Summary (highlighted by Plaintiff's counsel to identify the subject claim) attached separately hereto as *Exhibit 23*.  Thus, Farmers ostensibly agreed to stack UM/UIM coverage for that insured by stacking UM/UIM coverage on two (2) household vehicles.

Such conduct by Farmers in ostensibly stacking UM/UIM coverage is profoundly significant because it demonstrates that Farmers knew or should have known that its anti-stacking endorsement is invalid due to its failure to provide its insureds the UM/UIM multi-car discount required by law and, as a result, that it must stack UM/UIM coverage.  Indeed, had Farmers for one minute believed that its anti-stacking endorsement was on solid footing, it would not have stacked UM/UIM coverage for any

1   of its insureds.  Nonetheless, when ostensibly challenged with the law by a few insureds, Farmers

2   caves in and pays out the stackable benefits it is required to under the law.

3       At this time, due to its rampant and willful violation of Nevada's anti-stacking laws, Farmers

4   must treat Mr. Ratnayake and all others similarly situated in the same fair and reasonable manner it

5   treated the five (5) insureds discussed above.  Stated differently, Farmers must allow stacking of

6   UM/UIM coverage for all insureds who did not receive the legally required 28% UM/UIM multi-car

7   discount during the class period of September 8, 2005 to the present.

8   *6.    This Honorable Court's October 11, 2013 Order*

9       On October 3, 2012, Farmers filed a Motion for Judgment on the Pleadings in which it

10  contended that its anti-stacking endorsement was enforceable under Nevada law. (Dkt. 29).   On

11  October 19, 2012, Mr. Ratnayake filed a countermotion for summary judgment on his First and Fifth

12  Claims for Relief (underinsured motorist and declaratory relief).   (Dkt. 33).

13      On October 11, 2013, this Honorable Court entered an Order Denying Defendant's Motion for

14  Judgment on the Pleadings and Denying Plaintiff's Motion for Partial Summary Judgment (October

15  11, 2013 Order").  (Dkt. 43).  In the October 11, 2013 Order, this Honorable Court made the following

16  findings of facts and conclusions of law:

17              During the relevant time period, Ratnayake had three separate policies
18              with Farmers—one for each of his family's cars.  The policies for his
                Honda, Nissan, and Toyota were effective on January 22, 2010, April 11,
19              2010, and April 20, 2010, respectively.

20              Each policy included uninsured motorist ("UM") coverage for bodily
21              injury in the amount of $50,000 for each person and $100,000 for each
                occurrence ("50/100 coverage").

22              Ratnayake *paid a separate premium for UM coverage in each policy*:
23              $43.30 in the Honda policy; $110.00 in the Nissan policy; and $150.30 in
                the Toyota policy.

24
25              Each policy also contained the same exclusions to the UM coverage and
                an Endorsement that purported to prohibit any stacking of UM coverages
26              (the "Endorsement").

27              On May 21, 2010 Ratnayake was in an accident while driving his Honda
                and allegedly suffered severe injuries.  The tortfeasor was underinsured to
28              cover Ratnayake's alleged damages.

Ratnayake sought coverage under each policy's UIM provision (which included UIM coverage), asserting that each policy provided separate coverage for his injuries. Farmers paid him $50,000 under the Honda policy but refused to pay UIM coverage under the Nissan and Toyota policies. *Farmers asserted that the Endorsement was a valid anti-stacking limitation* that limited Ratnayake's recovery to the UIM limit under the policy that covered the particular car he was driving during the accident: the Honda policy.

For the purposes of UM/UIM coverage, Class I insureds include the named insured on the Farmers auto policy or a family member. Class I insureds enjoy *UM/UIM coverage regardless of what vehicle they are in*. *There is no dispute that Ratnayake is a Class I insured*.

*The policies allow Class I insureds to stack the 15/30 coverage amounts but prohibit stacking for any amounts over that. Farmers agrees with this interpretation.*

*[E]ach policy provided coverage for the same risk: that a Class I insured would be injured by an uninsured or underinsured motorist while the insured is in any of three insured vehicles*.

For the Endorsement to be valid and prohibit stacking…Farmers must prove that Ratnayake did not pay separate premiums under each policy for that same coverage. *Farmers has failed to do this*.

The policies show separate UM premiums, *but they are not lower in each successive policy*. Indeed, the opposite is true, as they rose from $43.30 for the Honda on January 22, 2010 to $150.70 for the Toyota on April 20, 2010.

Farmers supplying base rates for UM premiums *is insufficient* to prove that Ratnayake did not pay separate premiums for the same risk.

*Only two of the three policies* submitted as exhibits by Farmers state that the UM premium is discounted because of limitations on stacking.

Although these statements in the policy declarations, standing alone, are insufficient to prove that the discounts were actually applied to the UM premiums, the inconsistency among the policies weighs against Farmers. *Farmers has failed to prove that the Endorsement is a valid anti-stacking limitation as a matter of law*.

*See* (Dkt. 43) (emphasis added).

In summary, in its October 11, 2013 Order, this Honorable Court found that all three (3) policies issued by Farmers to Mr. Ratnayake provided him coverage for the same risk: being injured by an uninsured or underinsured motorist while occupying any of the three (3) household vehicles. In

-22-

addition, this Honorable Court determined that, as a Class I insured, Mr. Ratnayake would be entitled to stack UM/UIM coverage on the other two (2) household vehicles but was limited to $15,000.00 in UIM coverage on those vehicles if it is determined that Farmers' anti-stacking endorsement is invalid. Farmers was unable to prove that Mr. Ratnayake received a discount on his UM/UIM premiums. As a result, this Honorable Court determined that "Farmers has failed to prove that the Endorsement is a valid anti-stacking limitation as a matter of law." *Id*.

Indeed, similar to the 983 secondary policyholders who were deduced from the very small 2006-2009 sampling provided by Farmers in this litigation, Farmers has not been able to prove that Mr. Ratnayake received *any* or the *legally required* 28% UM/UIM multi-car discount since Mr. Ratnayake paid a higher premium on each secondary policy he purchased from Farmers.

Moreover, similar to the 469 secondary policyholders that settled for the UM/UIM policy limits available on one of the multiple household vehicles insured by Farmers from 2006 through 2009, Mr. Ratnayake was not allowed by Farmers to stack UM/UIM coverage available on his other household vehicles.

## III.

## **LEGAL ARGUMENT**

Plaintiff moves this Court for certification of a class under FRCP 23(b)(3) because the questions of law or fact predominate over any question affecting only individual members and the class action is a superior method to affect fair and efficient adjudication of this controversy, which involves the statutory construction of the insurance company's obligation to stack UM/UIM coverage in accordance with NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.

In determining whether a class is an appropriate method for adjudication of the controversy under FRCP 23(b)(3), the Manual for Complex Litigation, Fourth (2010), Section 21.141 provides that the Court should consider 3 criteria regarding the merits of the proposed class and scrutinize the proposed class representative. *Id*. at p. 370–371. The factors to consider are: numerosity, commonality, and typicality. These three (3) criteria explore whether the class action method is appropriate because common questions of law or fact predominate the legal issues and whether a class action is the superior method for adjudicating the controversy at issue for all involved. In addition, the

Court is asked to consider the adequacy of representation of the class by proposed class representative, Mr. Ratanayke, and the appropriateness of class counsel Jesse M. Sbaih (Plaintiff's counsel herein).

**A.     NUMEROSITY**

Numerosity is established by affidavit, declaration, or discovery in the case. Manual for Complex Litigation, Fourth (2010), Section 21.141 at p. 370–371.

In the present case, based on the small sampling provided by Farmers in this litigation for the years 2006-2009, there were 983 secondary policyholders who did not receive *any* or the *legally required* 28% UM/UIM multi-car discount as required by NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order. Thus, at the present time, there are at least 983 putative class members.

The exact number of putative class members will be easily and readily ascertained once Farmers discloses all data for UM/UIM premiums paid by its secondary policyholders from September 8, 2005 to the present (the "Class Period"). At that time, Plaintiff expects the number of the putative class members in "No UM/UIM Multi-Car Discount Subclass" and the "Below 28% UM/UIM Multi-Car Discount Subclass" to exceed 10,000, which would more than satisfy the numerosity requirement.

Regarding the "UM/UIM Stacking Subclass," based on the 2006 through 2009 UM/UIM Claims Summaries produced by Farmers in this litigation, Plaintiff is presently aware of at least 469 policyholders who would be eligible for stacking of UM/UIM benefits. Once Farmers discloses all data for UM/UIM claims processed from September 8, 2005 to the present, Plaintiff expects that the number of putative class members in the "UM/UIM Stacking Subclass" to exceed 1,500, which also would easily satisfy the numerosity requirement.

Therefore, Plaintiff respectfully submits that numerosity has been established for purposes of class certification.

**B.     COMMONALITY**

Assessing the commonality of claims and defenses requires examining the Complaint and looking behind the certification motion to glance at the merits of the underlying claims. *Kelley V. Microsoft Corp.*, 251 F.R.D. 544 (W.D. Wash 2008) *citing* Manual for Complex Litigation, Fourth (2010), Section 21.141.

In the present case, Plaintiff's Complaint alleges class claims for underinsured motorist (breach of contract); breach of the implied covenant of good faith and fair dealing (common law bad faith); unfair claims practices under NRS 686A.310(1)(a), (c), and (f); unjust enrichment for Farmers retaining funds that belong to the class; and declaratory relief.   These claims are necessary to obtain redress for Farmers' violation of the "premium requirement" of NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order.

The proposed subclasses would include only those insureds who did not receive the benefit of the statutory protection provided by NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order. Hence, the legal wrong suffered by each class member is identical. With respect to damages of each class member, the amount suffered by each class member would be calculated by the same formula: the amount of the UM/UIM multi-car discount that Farmers did not provide (for the "No UM/UIM Multi-Car Discount Subclass" and the "Below 28% UM/UIM Multi-Car Discount Subclass") and stackable UM/UIM benefits up to $15,000.00 for each secondary policies (for the "No Stacking Subclass), plus interest and attorney's fees.

## C.    TYPICALITY

Determining typicality requires deciding whether the named plaintiff's claims arise from the same course of events and involves legal arguments similar to all other class members and the court must decide the proposed representative's claims. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) (rejecting claim of employee denied promotion as not typical of class of applicants for work.).   In addition, the Court should ensure that the proposed named plaintiff's claims are not subject to defenses that do not apply to other members of the class. Manual for Complex Litigation, Fourth (2010), Section 21.141.

The claims of Plaintiff Ratnayake arise directly from NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order and the failure of Farmers to provide *any* or the *legally required* 28% UM/UIM multi-car discount to Nevada policyholders who had multiple vehicles in their household insured with Farmers, as did Mr. Ratnayake.   The three (3) subclasses are defined as follows:

Subclass A:    All Nevada residents (1) who were, between September 8, 2005 to present, insured by Farmers under multiple personal auto insurance policies; (2) whose

Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary policies issued by Farmers due to the presence of an anti-stacking endorsement in the auto policies; and (4) who were not provided with *any* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner (the "**No UM/UIM Multi-Car Discount Subclass**").

Subclass B: All Nevada residents (1) who were, between September 8, 2005 to present, insured by Farmers under multiple personal auto insurance policies; (2) whose Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary policies issued by Farmers due to the presence of a anti-stacking endorsement in the auto policies; and (4) who were not provided the *legally required 28%* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner (the "**Below 28% UM/UIM Multi-Car Discount Subclass**").

Subclass C: All Nevada residents (1) who were, between September 8, 2005 to present, Class I insureds and had more than one vehicle insured with Farmers (2) whose Farmers auto insurance policies included an anti-stacking endorsement; (3) who were, under Nevada law, entitled to an anti-stacking discount on secondary policies issued by Farmers due to the presence of an anti-stacking endorsement in their auto policies; (4) who were not provided *any* or the *legally required 28%* anti-stacking discount on their UM/UIM premiums on secondary policies issued by Farmers in violation of NRS 687B.145(1) and a July 19, 1993 Order by the Nevada Insurance Commissioner; (5) who were injured in a motor vehicle accident; (6) who made a claim for UM/UIM benefits from September 8, 2005 to the present with Farmers; (7) who exhausted the UM/UIM limits available on only one (1) of multiple household vehicles insured by Farmers; and (8) who did not receive stackable UM/UIM benefits available on other household vehicles (the "**UM/UIM Stacking Subclass**").

## D.    PREDOMINATE

A class action is the approved method for resolving small, individual claims where the common issues of law and fact predominate the individual issues that may arise, including the claims and/or defenses. In cases such as the present case that involved relatively small economic damage, the United States Supreme Court indicated that a class action is the appropriate method for adjudicating the collection of small claims. In *Amchen Prod., Inc. v. Windsor*, 521 U.S. 591, 616 (1997),  the Supreme Court stated, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for an individual to bring a sole action prosecuting his or her rights."

In the present case, the recovery for each class member in the "No UM/UIM Multi-Car Discount Subclass" and the "Below 28% UM/UIM Multi-Car Discount Subclass" will be limited to the difference between the actual discount provided by Farmers (if any) and the 28% UM/UIM multi-car discount Farmers was legally obligated to provide on each secondary policy it issued. As to the "UM/UIM Stacking Subclass," each class member will be allowed to stack UM/UIM coverage on other household vehicles insured by Farmers at the time of his/her motor vehicle accident and recover up to $15,000.00 on each policy.

**E.    SUPERIORITY**

A class action against Farmers in this matter is the superior method for resolving the claims for statutory violation by the insureds at issue herein. Any method other than a class action would lead to the potential of inconsistent rulings, disparate treatment to the insureds, incomplete resolution for the insureds, and a failure to obtain a change in policy and procedure of Farmers to comport with the statutory requirements. To Farmers' benefit, a class action will provide it the opportunity to resolve all claims in one forum by its own insureds on the statutory issue, and to avoid multiple bad faith verdicts against it for its willful and blatant violation of the "premium requirement" of NRS 687B.145(1) and the Insurance Commissioner's July 1993 Order. Hence, a class action is the most efficient, cost-effective, and manageable process by which to adjudicate the first-party claims against Farmers for violating the statute at issue.

**F.    MANAGEABILITY OF CLASS**

The proposed class will be manageable because it will consist of individual insureds seeking recovery for a violation of a statutory right. There will be little or no involvement by the Court with class issues during the course of discovery in preparation for trial because the class is discrete, defined, and limited in scope to just those individuals affected by the statutory violation from September 8, 2005 to the present. Moreover, resolution of the merits (if any) most likely will be undertaken by summary judgment motion after discovery.

The core conflict to be resolved centers around whether Farmers complied with "premium requirement" of NRS 687B.145(1) and the Insurance Commissioner's July 1993 Order, which Farmers' own documentary evidence produced in this case reveals that it did not comply with. If the

class prevails, then Farmers will be saddled with the burden to execute an appropriate plan for settlement and distribution.

**G.    ADEQUACY OF REPRESENTATION BY THE PROPOSED PLAINTIFF**

To be an appropriate representative for a class action, the named plaintiff need only "have a basic understanding about the lawsuit" and "need not be intimately familiar with every factual and legal aspects" of the litigation. *Morris V. Trans Fin. Corp.*, 175 F.R.D. 694, 698 (M.D. Ala. 1997).

Throughout this litigation, Mr. Ratnayake has faithfully and diligently participated by appearing for a lengthy deposition and cooperating with Plaintiff's counsel whenever called upon. Mr. Ratnayake will indeed represent the class vigorously and accurately to bring about a change of Farmers' present policies and procedures and to secure compensation to those insureds harmed by Farmers' violation of the "premium requirement" of NRS 687B.145(1) and the Insurance Commissioner's July 1993 Order.

**H.    CLASS COUNSEL**

The undersigned counsel who presently represent the Plaintiff respectfully request that the Court appoint them as class counsel in this matter. As the treatise on complex cases recognizes, "in many cases, the lawyers who filed this suit will be the obvious or only choice to be appointed counsel for the class. In such cases, the judge's task is to determine whether the applicant is able to provide adequate representation for the class in light of FRCP Rule 23(g)(1)(C) factors." Manual for Complex Litigation, Fourth (2010), Section 21.271 at p. 395.

The identification and appointment of proper class counsel is handled by evaluating the factors outlined in FRCP Rule 23(g)(1)(C), which in the present case points directly to the undersigned counsel for the following reasons:

(A)(i)    The undersigned counsel have worked diligently to identify the statutory violations in this matter, conducted a review of the legislative history, conducted discovery against the Defendant to show the Defendant's course of conduct in dealing with its insureds over time on this issue, to assist the Court's inquiry on the scope of the proposed class;

(A)(ii)    The proposed counsel are experienced in handling these types of claims. Based on the affidavit of Jesse Sbaih, attached hereto as *Exhibit 24*, counsel has over 12 years of experience in

1  handling complex insurance disputes involving UM/UIM and other coverages, and handling complex

2  litigation matters;

3     (A)(iii)  The applicable law is found in both the Nevada statutes and the Federal Rules of Civil

4  Procedure.  Proposed counsel for the class has years of experience handling matters in federal court

5  and dealing with Nevada statutes and particularly laws and regulations governing insurance claims.

6     (A)(iv) If the matter is not amicably resolved, the proposed counsel is ready, willing and able

7  to take this matter to trial, including exemplary damages to be levied against the Defendant for

8  violating a statutory obligation;

9     To that end, Jesse Sbaih & Associates is a fully functioning law firm with an outstanding and

10  bright young associate and other hard-working and highly dedicated staff, which has the resources and

11  the will-power to handle and manage in a timely manner the demands of discovery and trial in this

12  matter.

13  **NOTICE OF PROPOSED CLASS**

14     Attached hereto as *Exhibit 25, Exhibit 26*, and *Exhibit 27* are the proposed notices to all

15  prospective members of three (3) subclasses with the information to opt-out for each subclass.

16  Plaintiff respectfully requests that the Court issue a briefing schedule to address the manner and

17  method of notice to be provided to members of each subclass, and the maintenance of the selection to

18  opt-out of the subclass by any individuals.

19                              **IV.**

20                        <u>**CONCLUSION**</u>

21     Based on the foregoing, Mr. Ratnayake respectfully requests this Court certify the class as

22  described above, appoint him as a representative of the class, appoint the proposed class counsel as

23  indicated, and order that notice of the proposed class be provided to prospective class members.

24     DATED this 3rd day of February, 2014.

25                    JESSE SBAIH & ASSOCIATES, LTD.

26                    By <u>/s/ Jesse M. Sbaih</u>
                        Jesse M. Sbaih (#7898)
27                      Ines Olevic-Saleh (#11431)
                        170 South Green Valley Parkway, Suite 280
28                      Henderson, Nevada 89012
                        *Attorneys for Plaintiff and all others similarly situated*
                                    -29-

**CERTIFICATE OF SERVICE**

Pursuant to FRCP Rule 5(b), I certify I am an employee of the law firm of Jesse Sbaih & Associates, Ltd., and that on this date, I caused **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** to be served via electronic service to the following:

J. Christopher Jorgensen
LEWIS ROCA ROTHBERGER
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

Thomas P. Jonson, Esq.
Janette L. Ferguson, Esq.
Kimberly Spiering, Esq.
DAVIS GRAHAM & STUBBS LLP
1550 Seventh Street, Suite 500
Denver, CO 80202
*Attorneys for Defendant*
*Farmers Insurance Exchange dba Farrners*

DATED this 3rd day of February, 2014.

 /s/ Jennifer Herald
An employee of JESSE SBAIH & ASSOCIATES, LTD.