# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NAYANANANDA RATNAYAKE, individually, and on behalf others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE d/b/a FARMERS; and DOES I – V and ROES VI – X, inclusive,<br><br>Defendant. | Case No. 2:11-cv-01668-APG-CWH<br><br>**ORDER** |

Plaintiff Nayanananda Ratnayake alleges that defendant Farmers Insurance Exchange (1) has not provided some customers with a premium discount required by Nevada law and (2) has not allowed some customers to stack under-insured motorist policies as required by Nevada law. Ratnayake brought this lawsuit asserting causes of action arising out of Farmer's alleged failure to provide discounts and stack policies. Ratnayake now moves to certify three subclasses: the first two assert claims related to Farmer's alleged failure to discount premiums, the third asserts claims related to Farmer's alleged failure to stack policies.[1]

Ratnayake's proposed classes fail on multiple grounds, any of which would be independently sufficient. First, Ratnayake has failed to articulate ascertainable classes. Ratnayake's proposed classes include individuals given a discount "in violation" of Nevada law.

---

[1] I previously determined that the Nevada Department of Insurance ("NDI") may have exclusive jurisdiction over Ratnayake's claims. Because this is an issue of justiciability, and because the parties had not addressed it in their papers, I ordered them to provide supplemental briefing. (Dkt. #53.)

It is impossible to determine the members of the classes without first determining the merits of their claims, or in other words whether they were given a discount in violation of Nevada law.

Second, the proposed classes' claims will involve more individualized issues than common ones. These claims will require determinations about what discounts Farmers provided each insured, whether each discount was sufficient under Nevada law, and the extent of damages suffered by each insured. Each of these questions will vary between insureds, and a determination of these issues as to one class member will not necessarily settle class-wide issues.

Finally, a class action in this court is not the superior forum for resolution of Ratnayake's claims. Individualized issues will make management of the class unwieldy. Additionally, the Nevada Supreme Court has expressed a preference that claims involving insurance code violations be brought before the Nevada Department of Insurance ("NDI") in the first instance.

My subject matter jurisdiction over this case arises from the Class Action Fairness Act ("CAFA"). CAFA jurisdiction, in turn, is predicated on the existence of a valid class action. Because I deny Ratnayake's motion to certify, I do not have jurisdiction over this case. Therefore, I remand the case back to the Nevada state court. Even if I retained jurisdiction under CAFA, I would dismiss Ratnayake's case because it presents claims that should have been brought before the NDI.

**I.     BACKGROUND**

   **A. Anti-stacking provisions and Farmers' discounts**

Anti-stacking provisions in insurance policies prevent insureds from combining their coverage limits under separate policies. NRS 687B.145(1) prevents insurers from including these anti-stacking provisions if the insured has paid for coverage of the same risk under multiple policies. The statute recognizes that if an insured has paid for coverage of the same risk more than once, she should be permitted to collect under each of the policies. Nevada law provides an

exception: an insurer may include an anti-stacking provision if it discounts overlapping policies so that customers are not double-charged for the same risk.[2] If the insurer does not sufficiently discount the overlapping policies, insureds may stack their coverage.

On a regular basis, insurers submit their proposed premium rates and discounts to the NDI for approval.[3] In 1993, the NDI issued an Order approving Farmer's uninsured-motorist, multi-car ("UMMC") premium discount of 28%.[4] This 28% discount was meant, *in part*, to comply with NRS 687B.145 by ensuring customers received a sufficient discount on overlapping UMMC premiums.[5] Farmers has continued to submit its proposed rates and discounts to the NDI. Farmers reported to the NDI a discount rate of 18%-35% in 2006, and a rate of 23% in 2008.[6] Farmers alleges that until 2008 it provided an average UMMC discount of 28%, and an average of at least 23% after 2008.[7] Farmers also informed the NDI that it would be revising its future rates as it gathered data on non-stacked underinsured motorist risk.[8]

Farmers alleges that it provides anti-stacking discounts, but that it calculates them by actuarializing the anti-stacking risk as part of its multi-car discount.[9] In other words, Farmers appears to argue that an insured's inability to stack policies is considered as a factor in its premium or discount calculation, and thus the discount is given on the front-end rather than at the

---

[2] *Serrett v. Kimber,* 110 Nev. 486, 874 P.2d 747, 751 (1994).

[3] N.R.S. 690B.031(3) ("The Commissioner shall review and approve or disapprove each policy of insurance that offers a reduction in the premiums provided for in this section.").

[4] (Dkt. # 4-1 at 61.)

[5] (*Id.* at 66.)

[6] (Dkt. #48-1.)

[7] (*Id.*)

[8] (*Id.*)

[9] (*Id.* at 5-6.)

back-end.[10] Farmers therefore has no means to determine what specific anti-stacking discount it gives to individual customers. Instead, with the NDI's approval, Farmers has bundled its anti-stacking discount within its overall multi-car discount.[11] "By calculating the proposed rates in part based on the differences between single-and multi-vehicle households, the discount captured the effect of the decreased risk associated with anti-stacking provisions."[12] Accordingly, Farmers has no records specifying the anti-stacking discount any customer receives. Determining the anti-stacking discount will require analysis, and potentially expert testimony, to parse out what portion of each customer's variable multi-car discount is attributable to anti-stacking considerations.[13]

### B. Ratnayake's claims

Ratnayake alleges that Farmers (1) has not provided some of its customers with a specific premium discount required by Nevada law and the NDI's 1993 Order and (2) has not allowed some of its customers to stack their under-insured motorist policies as required by Nevada law. Ratnayake filed this lawsuit alleging (1) underinsured motorist claims; (2) breach of the implied covenant of good faith and fair dealing, (3) unfair claim practices, (4) unjust enrichment, (5) declaratory relief, and (6) fraud.

Plaintiff now moves to certify three subclasses in this class action against Farmers. All three proposed subclasses include insureds with policies that contain anti-stacking provisions who allegedly received an insufficient discount under Nevada law. Subclass A consists of insureds who allegedly received no discount; Subclass B consists of insureds who allegedly received some, but not enough, discount; and Subclass C consists of insureds who actually filed a claim

---

[10] (*Id.*)
[11] (*Id.*)
[12] (Dkt. #48 at 4.)
[13] (Dkt. #48-1 at 5-6.)

4

but were not permitted to stack their policies despite that Farmers allegedly did not provide them with an adequate discount.

## II. LEGAL STANDARD: CLASS CERTIFICATION

A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[14] Although not specifically mentioned in Rule 23(a), the plaintiff also must adequately define the class so that it is readily ascertainable.[15]

In addition, a district court must find at least one of the several conditions set forth in Rule 23(b) is met. The parties agree Rule 23(b)(3) is at issue here, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy."[16]

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule."[17] "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."[18] The class can be certified only if I am "satisfied, after a rigorous analysis, that the prerequisites of

---

[14] Fed. R. Civ. Proc. 23(a).

[15] *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 355 (C.D. Cal. 2013).

[16] *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2549 n. 2 (2011) (citations omitted).

[17] *Id.* at 2551.

[18] *Castano v. The Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996).

5

Rule 23 have been satisfied."[19]  This rigorous analysis will often "overlap with the merits of the plaintiff's underlying claim. That cannot be helped."[20]  Ultimately, it is within my discretion to determine whether a class should be certified.[21]

## III. DISCUSSION

### A. Class Certification

As explained above, to certify a class I must "rigorously" analyze whether Ratnayake has made an affirmative showing of: (1) ascertainment, (2) numerosity, (3) commonality, (4) typicality,[22] (5) adequate representation, and (6) predominance and superiority.  Even assuming Ratnayake will adequately represent the class and that the less demanding numerosity, commonality, and typicality requirements are met, Ratnayake has failed to establish either ascertainability, predominance or superiority.

As a preliminary note, Ratnayake argues the subclasses' claims have already been proven based on "undisputed evidence"[23] that Farmers failed to provide its customers with sufficient premium discounts.[24]  But Farmers has introduced evidence creating a genuine dispute as to whether it provided customers with sufficient premium discounts under NRS 687B.145.[25]

---

[19] *General Telephone of Southwest v. Falcon*, 457 U.S. 147, 160–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

[20] *Dukes*, 131 S.Ct. at 2551.

[21] *See Dukes*, 474 F.3d at 1223.

[22] Ratnayake's claims, based largely on Farmers' alleged breach of contract, also appear to be insufficiently typical of the two proposed subclasses that seek only return of overpaid premiums.

[23] Ratnayake's "undisputed evidence" consists of data Farmers provided in support of its *removal* briefing to establish jurisdiction based on the extent of damages alleged in plaintiff's complaint. (Dkt. #46 at 3-18.)  Farmers has provided evidence showing that this removal data does not illustrate the anti-stacking discounts. (Dkt. #48 at 2-8.)

[24] (Dkt. #46 at 2.)

[25] Farmers provided evidence establishing disputes about 1) what discounts it has provided to its various customers, 2) whether those discounts were improper, and 3) assuming

6

Regardless, Ratnayake is not entitled to prove the merits of the claim at this stage. I consider issues related to the merits of Ratnayake's—and the subclasses'—claims only in the context of balancing the class certification factors below.

### *1. Whether the proposed subclasses are capable of being readily ascertained*

Before weighing the enumerated class certification factors, I must determine that the proposed subclasses are ascertainable, or in other words, that it is "administratively feasible for me to ascertain whether an individual is a member" of the proposed subclasses.[26] A class may not be ascertainable if I must make detailed fact determinations to determine whether someone is a member of the class.[27]

Ratnayake's proposed subclasses include Farmers customers that received insufficient anti-stacking discounts under Nevada law. To determine whether an insured is within Ratnayake's proposed subclasses, I must determine (1) how much of an anti-stacking discount each insured was given and (2) whether each discount was sufficient to allow anti-stacking as to that insured. The evidence and arguments submitted by the parties makes clear that this will be a fact-intensive undertaking. Farmers' anti-stacking discounts are calculated, along with numerous other factors, as part of its multi-car discounts and appear to vary from insured to insured.[28]

---

Farmers did not provide a sufficient discount to prevent stacking, whether insureds may recover damages. (Dkt. #46 at 1-8.)

[26] *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal.1998).

[27] *In re Wal Mart Stores, Inc. Wage & Hour Litig.,* 2008 WL 413749, *5 (N.D. Cal. Feb. 13,2008); *Herrera v. LCS Fin. Servs. Corp.,* 274 F.R.D. 666, 675 (N.D. Cal. 2011) (finding class ascertainable because determining whether someone was a member of the class required a single question of proposed members).

[28] (Dkt, #48-1 at 5-6.) Farmers suggests that it incorporates the anti-stacking discount into the total discount submitted, and approved, by the Nevada Department of Insurance. (*Id.*) The NDI is tasked with approving rates and discounts, and evidence submitted by the parties indicates Farmers specifically informed the NDI that its multi-car discount rates, in part, encapsulates the anti-stacking discount. (*Id.*)

More importantly, Ratnayake's proposed subclasses predicate membership on the merits of their claims, also referred to as "fail-safe" classes. Courts frequently deny fail-safe classes because they are unfair and inefficient.[29] Ratnayake's proposed subclasses consist of members who were given insufficient discounts under Nevada law. But whether Farmers' discounts violated Nevada law forms the heart of this case. I would need to determine that Farmers provided insufficient discounts under Nevada law before a single subclass would come into existence.

### 2. *Predominance*

The predominance requirement is "demanding."[30] Predominance requires that "[common] questions of law or fact . . . predominate over any questions affecting only individual members."[31] This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[32] I must take a "close look" at whether common questions predominate over individual ones.[33]

In *Anchem Products v. Windsor*, the plaintiff argued that because all proposed class members were exposed to the same harm—asbestos—common liability issues would outweigh individual ones. The United States Supreme Court rejected this argument, holding that shared experience or harm is not enough and that given the number of individualized issues related to

---

[29] *See In re AutoZone, Inc., Wage & Hour Employment Practices Litig.,* 289 F.RD. 526, 545-46 (N.D. Cal. 2012) ("This is problematic because ... the Court cannot enter an adverse judgment against the class."); *see also Kamar v. RadioShack Corp.,* 375 F. App'x 734, 736 (9th Cir. 2010) (discussing unfairness of fail-safe classes).

[30] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–624 (1997).

[31] Fed. Civ. R. Proc. 23(b)(3).

[32] *Amchem Products*, 521 U.S. at 623–624.

[33] *Id.*

class members' injuries, the predominance factor was not met.[34]  Likewise, in the insurance context, courts commonly find the predominance requirement unmet where liability depends on individual, fact-intensive questions.[35]

Ratnayake suggests only two common issues: first, that the subclasses seeking return of premiums "will be limited to the difference between the actual discount . . . and the 28%" discount set forth in the NDI's Order;"[36] and second, that the subclass seeking to stack policies "will be allowed to stack . . . coverage . . . and recover up to $15,000 on each policy."  Not only do these statements refer to relief rather than legal or factual issues, they ignore the many underlying individualized determinations that will be necessary in this case.

The proposed subclass members' claims will raise at least the following issues: (1) the extent of discount in fact given to each insured, (2) whether the discount was sufficient to comply with Nevada law, and (3) for the subclass members seeking to stack policies, the extent of damages and the validity of any contractual or other defenses.  Looking beyond the pleadings, Ratnayake has failed to meet his burden to establish that these central issues can be determined on a class-wide basis.

---

[34] *Id.*

[35] *See, e.g., Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011) (Plaintiffs failed to establish predominance because "under [the plaintiffs'] theory of the case, each [insured's] entitlement to the discount rate turns on an individual case-by-case analysis."); *Boucher v. First Am. Title Ins. Co.,* No. C10-199RAJ, 2012 WL 3023316 at *8 (W.D. Wash. July 24, 2012) ("[P]roving or disproving each class member's claim depends on a file-by-file review of all class members' transactions. This individualized inquiry is incompatible with a class action."); *Corwin v. Lawyers Title Ins. Co.,* 276 F.R.D. 484, 490 (E.D. Mich. 2011) ("[I]nstead of liability being established 'in one stroke,' it would take an assessment of each transaction to determine if the absent class member qualified for the discount rate.").

[36] As explained above, plaintiff's own evidence shows that the 28% discount proffered to the NDI included more than the anti-stacking discount and thus does not create a class-wide issue regarding liability.

First, Ratnayake fails to show, practically, how the extent of Farmers' discounts to individual insureds can be proven on a class-wide basis. Ratnayake relies on documents Farmers produced in support of removal.[37] These documents show that some customers have multiple policies where their second policy's premium is as much, or more, than their first policy. Ratnayake argues it is therefore obvious these insureds did not receive an anti-stacking discount. But Farmers argues that it applied the anti-stacking discount to each policy—not just secondary policies. That a secondary policy's premium is as much as a primary policy does not mean an anti-stacking discount was not applied. Further, Farmers has provided evidence showing that, with the NDI's approval,[38] it embedded its anti-stacking discounts within its multi-car discounts and that these discounts varied from insured to insured.

Determining the extent of the anti-stacking discount for each insured will therefore require a determination of what portion of each insured's multi-car discount is attributable to the anti-stacking discount. Based on Farmers' evidence, this inquiry will require file-by-file review and analysis that will turn on each policy's underwriting.[39] Ratnayake does not provide any means of determining discounts on a class-wide basis. If Ratnayake proves Farmers gave one insured a particular discount, this would not help me or the parties determine whether other subclass members were given the same discount.

Second, Ratnayake has failed to point out any way to determine, on a class-wide basis, what discount rate is sufficient to comply with NRS 687B.145. Ratnayake suggests the NDI's Order provides the appropriate discount of 28% and that the subclass members will merely need to calculate the difference between their discount and 28%. But the NDI appears to have

---

[37] (Dkt. #46.)

[38] (Dkt. #48-1 at 5.)

[39] (Dkt. ##48-1 at 4-6; 48 at 10-20.)

10

approved the 28% discount to include more than just an anti-stacking discount.[40] More importantly, NRS 687B.145 does not require a specific discount. I thus fail to see how a static discount of 28% would be relevant to determining whether an insurer complied with NRS 687B.145. The statute forecloses double-charging for the same risk. The discount needed to ensure that an insured is not double-charged will vary from insured to insured depending on each insured's policy and the cost of their overlapping premiums. If Ratnayake proves one class member needed a 15% discount to ensure she was not double-charged, this determination would not implicate whether the next class member was given a sufficient discount under her policy.

Finally, plaintiffs have failed to establish any other common questions for the subclasses given that the validity and extent of damages will vary from insured to insured—particularly as to subclass members seeking to stack their policies and collect contract and bad faith damages.[41]

Ratnayake has failed to establish common factual or legal issues, much less that common issues predominate over individual issues.

### 3. *Superiority*

In determining superiority, I consider the four factors set forth in Rule 23(b)(3): (1) the interest class members have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy that has already been commenced by or against class members; (3) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties that will likely be encountered in managing the suit as a class action.

---

[40] Notably, claims based on a violation of the NDI's Order are unlikely to be justiciable in this court, as explained below.

[41] The policy-stacking claims also will require determinations regarding the validity of medical benefits claims, which weighs against certification. *Folks v. State Farm Mut. Auto. Ins. Co.,* 281 F.R.D. 608, 620 (D. Colo. 2012).

11

Two superiority factors heavily weigh against certification here: the difficulties in managing this suit as a class action and the desirability of concentrating the litigation in this forum. As explained above, there do not appear to be any means to determine, on a class-wide basis, the extent of the anti-stacking discount given to each insured, whether each discount is sufficient as to each insured, and the extent of damages and liability for breach of contract and bad faith as to each insured. There appears little advantage to managing a class-action of hundreds of mini-trials.[42]

Additionally, the legal and factual issues underlying the proposed claims are better resolved in another forum: the NDI. The proposed classes' claims will raise at least the following issues: (1) whether Farmers may embed its anti-stacking discount within its multi-car discount, (2) whether Farmers' anti-stacking discounts are sufficient under Nevada law, and (3) whether Farmers has violated the NDI's Order. The Nevada Supreme Court has expressed a strong preference for these types of issues to be adjudicated before the NDI.[43]

### 4. Conclusion

Ratnayake's motion for class certification fails on multiple grounds. He has failed to define a properly ascertainable class, his claims raise individualized issues that far outweigh common ones, and a class-action in this court is not the best forum for his claims. I deny Ratnayake's class certification with prejudice because the nature of Ratnayake's underlying claims—which require determination of Farmers' discounts, the sufficiency of those discounts,

---

[42] *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1192 amended by, 273 F.3d 1266 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'").

[43] *See Allstate Ins. Co. v. Thorpe,* 170 P.3d 989, 993–94 (Nev.2007); *Brown v. State Farm Fire & Cas. Co.,* 2:10-CV-01843-KJD, 2011 WL 2295162 (D. Nev. June 8, 2011); *Rathnayake v. Farmers Ins. Exchange,* 2014 WL 3897960 (D. Nev. 2014).

and the determination of damages—makes it impossible to cure the deficiencies in order to maintain a class action.

### B. Continued jurisdiction over Ratnayake's claims

Federal Rule of Civil Procedure 12(h)(3) instructs "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Farmers removed this case to federal court by arguing jurisdiction was proper under the Class Action Fairness Act ("CAFA").[44] CAFA creates subject matter jurisdiction in federal courts for class actions involving (1) at least 100 class members, (2) diversity between one class member and one defendant, and (3) class claims totaling more than $5,000,000. There is a "strong presumption against removal jurisdiction."[45]

The Ninth Circuit has not clarified whether denial of class certification forecloses subject matter jurisdiction over a case removed under CAFA. The majority of district courts in this circuit have found that subject matter jurisdiction under CAFA does not exist after class certification is denied.[46] I follow this approach. If parties cannot otherwise bring a case in federal court, they should not be permitted to create jurisdiction by raising a faulty claim for class certification. Parties could manufacture jurisdiction even when the policy underlying CAFA jurisdiction—issues unique to class actions—is not served.

---

[44] (Dkt. #1 at 3-4.) Without CAFA, Farmers, as an insurance exchange, is a resident of Nevada and therefore I have no jurisdiction under 28 U.S.C. 1332(a). *Nevada Capital Ins. Co. v. Farmers Ins. Exch.,* No. 2:12-CV-02166-APG, 2014 WL 6882342, at *1-2 (D. Nev. Dec. 4, 2014).

[45] *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1997) (citation omitted).

[46] *See, e.g., Salazar v. Avis Budget Grp., Inc.,* No. 07-CV-0064-IEG(WMC), 2008 WL 5054108, at *5 (S.D. Cal. Nov. 20, 2008); *Arabian v. Sony Elecs. Inc.,* No. 05cv1741, 2007 WL 2701340, at *3 (S.D.Cal. Sept.13, 2007) ("[F]ollowing denial of class certification, no subject matter jurisdiction exist[s] under CAFA ...."); *Xiao-Mei Jin v. Ben Bridge-Jeweler, Inc.,* No. 2:07-CV-1587-GEB-KJN, 2009 WL 981600, at *1 (E.D. Cal. Apr. 9, 2009); *McGaughey v. Treistman,* No. 05 CIV.7069 HB, 2007 WL 24935, at *1 (S.D.N.Y. Jan. 4, 2007)

Further, CAFA jurisdiction does not trigger at the possibility of a class, but instead the statute grants jurisdiction only over "*a class action. . . .*"[47] Subject matter jurisdiction must exist at the outset of a case and throughout. My denial of class certification means there is not, and never was, CAFA subject matter jurisdiction.[48] Because I have denied Ratnayake's class certification with prejudice, and no class action exists, I have no jurisdiction over Ratnayake's claims.[49] I therefore will remand the case to the Nevada state court.

Even if I retained jurisdiction under CAFA, I would dismiss Ratnayake's case because his claims do not appear ripe for my determination. As Ratnayake explains in his papers, all of his claims "arise directly from NRS 687B.145(1) and the Insurance Commissioner's July 19, 1993 Order and the failure of Farmers to provide any or the legally required 28% UM/UIM multi-car discount to Nevada policyholders who had multiple vehicles in their household insured with Farmers." Ratnayake's claims require me to determine whether Farmers' discounts violate the Nevada Insurance Code and the NDI's rate-setting Order. The Nevada Supreme Court has expressly directed that these issues should be heard by the NDI in the first instance.[50] A

---

[47] 28 U.S.C. 1332(d)(2) (emphasis added).

[48] *Salazar v. Avis Budget Grp., Inc.,* No. 07-CV-0064-IEG(WMC), 2008 WL 5054108, at *5 (S.D. Cal. Nov. 20, 2008).

[49] Moreover, Farmers, as an insurance exchange, appears to be a resident of Nevada and therefore unable to remove based on diversity jurisdiction.

[50] The Nevada Insurance Code creates a comprehensive scheme of administrative regulation and enforcement. The Insurance Commissioner has authority to "[e]nforce the provisions of [the Nevada Insurance] Code"—including NRS 687B.145. NRS 679B.120(3). The Insurance Commissioner has "exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in [Nevada]." NRS 686A.015(1). The NDI is permitted to hold hearings for any purpose within the scope of the Insurance Code, and parties aggrieved by the NDI's decisions may seek judicial review. NRS 679B.370.

plaintiff's failure to pursue such a claim with the NDI renders the claim unripe and therefore nonjusticiable.[51]

IV.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Nayanananda Ratnayake's Motion for Class Certification (Dkt. 46) is DENIED.

IT IS FURTHER ORDERED that this action is hereby REMANDED to the state court for lack of subject matter jurisdiction.

DATED THIS 27th day of February, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[51] *Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 993–94 (Nev.2007); *Brown v. State Farm Fire & Cas. Co.*, 2:10-CV-01843-KJD, 2011 WL 2295162 (D. Nev. June 8, 2011); NRS 686A.015(1). Ratnayake argues his case falls outside of the NDI's jurisdiction because he asserts claims for bad faith, and the court in *Thorpe* stated that bad faith claims could still be brought in court. But courts have not recognized this exception outside of the benefit-claims context. *See Joseph v. Hartford Fire Ins. Co.,* 2014 WL 2741063. Ratnayake's bad faith claim for failing to stack policies is a novel issue that apparently has not yet been addressed by the Nevada Supreme Court. Given the Nevada Supreme Court's express preference for having the NDI address violations of the insurance code—an issue underlying the anti-stacking claims—the NDI is likely the appropriate forum for this case in the first instance. *See id.* In any event, I would use my discretion to dismiss this case under the doctrine of primary jurisdiction to allow the NDI to determine these insurance code-related issues. *See Sports Form v. Leroy's Horse & Sports*, 823 P.2d 901 (Nev. 1992).